BEATY, Chief District Judge,
dissenting in part:
I respectfully dissent from the majority opinion to the extent that it affirms the scope of the declaratory judgment entered by the district court in this case. In my view, the district court in this case erred by announcing a broad declaratory judgment that required “equal access” to all “aural content” at FedEx Field, rather than focusing on whether the auxiliary aids provided by Defendants were sufficient to ensure “effective communication.” By setting out an “equal access to aural content” standard, the district court set out a rule that would potentially require that all content broadcast over the public address system at an athletic event at a public stadium be captured and provided to deaf or hearing impaired individuals in order to comply with the ADA, even though the ADA itself does not include such a requirement, instead of following the “auxiliary aid” analysis set out in the applicable statutory and regulatory provisions.
The Americans with Disabilities Act prevents discrimination on the basis of disability “in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.” 42 U.S.C. § 12182(a). Under the statute, a place of public accommodation must take necessary steps to ensure that hearing-impaired individuals are not “excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services,” unless such steps would result in an undue burden or fundamental alteration in the nature of the good, service, facility or privilege. 42 U.S.C. § 12182(b) (2) (A) (iii) (emphasis added). The Department of Justice regulations that implement these provisions state that “[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities.” 28 C.F.R. § 36.303(c). “The term ‘auxiliary aids and services’ includes ... [qualified interpreters, notetakers, computer-aided transcription services, written materials, telephone handset amplifiers, *394 assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD’s), video-text displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments.” 28 C.F.R. § 36.303(b). The Department of Justice has noted that “[t]he auxiliary aid requirement is a flexible one.... [T]he Department believes that Congress did not intend under title III to impose upon a public accommodation the requirement that it give primary consideration to the request of the individual with a disability.” 28 C.F.R. part 36, App. B, Sec. 36.303. Thus, “[a] public accommodation can choose among various alternatives as long as the result is effective communication.” Id.
Under these statutory and regulatory provisions as they relate to hearing-impaired individuals, public accommodations should follow a three-step process: (1) a public accommodation must provide auxiliary aids where necessary to ensure effective communication; and (2) if this requirement is triggered and auxiliary aids are needed to ensure effective communication, the public accommodation can choose what auxiliary aids are provided as long as the result is effective communication; but (3) the public accommodation need not provide an auxiliary aid or service if it would result in an undue burden or fundamental alteration. Thus, the relevant focus is on whether auxiliary aids are needed for, and result in, “effective communication.”
In the present case, under this analysis, the first question is whether an auxiliary aid or service of some type must be provided to ensure effective communication at FedExField. If so, the analysis then moves to the second step: whether the auxiliary aids chosen by Defendants result in effective communication. In this regard, there were two types of auxiliary aids or services offered by Defendants in this case. First, there is no dispute that Defendants have been providing assisted-listening devices as an auxiliary aid or service since 1997. However, there is also no dispute that those devices did not benefit Plaintiffs due to the nature of Plaintiffs’ hearing impairments. Second, after this suit was filed, Defendants attempted to address Plaintiffs’ concerns by providing auxiliary aids that included captioning on the LED boards at the 50-yard line of all public service announcements, play calls, game announcements, emergency announcements, and other announcements and information broadcast over the public address system, in addition to captioning of the video feeds in the concession areas.[1] However, the professional stenographer/captioner providing the captioning did not caption the lyrics to songs, because he testified that he followed the “industry standard” of not captioning song lyrics due to difficulty in understanding and correctly captioning the lyrics, and because the software that he used did not allow him to “prescript” the lyrics in advance. (Stephen Clark Dep., J.A.-0433 to JA-0434).
Before the district court, Defendants disputed whether the ADA required them to provide deaf and hard of hearing fans with any type of auxiliary aids and services beyond the assistive-listening devices in order to ensure effective communication. The district judge properly rejected this contention, finding that the assistive-listen-ing system provided by Defendants did not result in effective communication for Plaintiffs, and further finding that simply watching the game without any auxiliary *395 aid or service did not provide effective communication. These findings rightly would have supported a declaratory judgment that an auxiliary aid of some type must be provided by Defendants beyond the assistive-listening devices, unless undue burden or fundamental alteration could be established.
However, the district court went beyond this analysis, and rather than declaring that an auxiliary aid of some type was necessary for effective communication, the district court instead declared that “the ADA requires Defendants to provide deaf and hard of hearing fans equal access to the aural information broadcast over the stadium bowl public address system at Fe-dExField.” The district court then specifically concluded that the ADA requires Defendants to provide auxiliary aids with respect to the lyrics to the songs played during the cheerleader’s dance routines. On this point, the district court did not consider whether the captioning system being provided by Defendants resulted in effective communication as a whole, and instead created a separate analysis focusing on “equal access” to a particular communication. While the ADA provides for “full and equal enjoyment” of the services at a place of public accommodation, the primary obligation is to furnish auxiliary aids and services that provide an “effective method” of communication. Thus, the district court’s focus on providing “equal access” to the “aural content” but failure to evaluate whether the auxiliary aids actually provided resulted in “effective communication” goes beyond the regulatory framework.[2]
In addition, the district court’s failure to consider whether the auxiliary aids that were provided resulted in effective communication left the second step in the analysis unanswered. The Complaint in this case specifically requested that all public announcements be captioned on the Jumbo-Trons, not the LED boards, but the district court did not consider whether the auxiliary aid of captioning on the Jumbo-trons, as requested, was necessary for effective communication, nor did the district court consider whether the auxiliary aid provided by Defendants of captioning on the LED boards resulted in effective communication. The district court did conclude that a trial was necessary on one issue related to the LED captioning, specifically, the “line of sight” issue regarding the location of the LED boards, but that issue was subsequently dropped by the Plaintiffs. Thus, the only issue remaining related to the song lyrics, for which the district court concluded that “equal access” was required, apart from any analysis of the auxiliary aids that were being provided. Thus, the ultimate issues raised in this case were not addressed, leaving ongoing questions regarding the impact of the district court’s Judgment.[3]
*396 In my view, the auxiliary aids provided here, i.e., the captioning that was provided on the LED boards and in the concourse area, were sufficient to result in effective communication, even if Defendants did not provide word-for-word captioning of the songs in the cheerleader’s dance routines. Of course, even this conclusion does not mean that captioning is required for all stadiums, since other auxiliary aids could also be sufficient to result in effective communication. In addition, other stadiums may be able to raise defenses of undue burden or fundamental alteration, which were not raised by Defendants in this case. In this regard, I would note that the Department of Justice has undertaken the process of rulemaking to consider these various issues, but has concluded that “further consideration and review is prudent” given the complexity of the issues involved. Thus, the issues potentially raised in this case and the requirements of the ADA in this context would be matters of public importance and potential future rulemak-ing, but many of these issues were not fully litigated below or on appeal, given Defendants’ decision to voluntarily provide auxiliary aids, including captioning on the LED boards and on the video screens in the concourse area. Indeed, this appeal came before us driven not by the substantive issues, but instead by Plaintiffs’ claim for attorney’s fees, as was candidly discussed during oral argument. Therefore, in my view, this case is not an appropriate forum or proceeding to determine these potential issues, and particularly to announce the broad rule set out in the district court’s declaratory judgment.
Therefore, given all of the issues outlined above, I would reverse the declaratory judgment in this case, as it was entered by the district court, and I respectfully dissent from the majority opinion to the extent that it affirms that declaratory judgment.[4]

. Defendants also offered the possibility of a hand-held captioning system. However, Plaintiff Feldman rejected this option and the district court did not consider whether this type of auxiliary aid would result in effective communication.

. The Department of Justice Technical Assistance Manual includes a reference to "equal access.” However, the Technical Assistance Manual explains that "[i]n order to provide equal access, a public accommodation is required to make available appropriate auxiliary aids and services where necessary to ensure effective communication.” Thus, even under the Technical Assistance Manual, the obligation is framed in terms of “effective communication.” The Technical Assistance Manual further notes that “[t]he type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the length and complexity of the communication involved” and “the ultimate decision as to what measures to take to ensure effective communication rests in the hands of the public accommodation, provided that the method chosen results in effective communication.” U.S. Dep’t of Justice, Civil Rights Division, The Americans with Disabilities Act: Title III Technical Assistance Manual III— 4.3200.

. The difficulty in this conclusion is exemplified by the ultimate result here: the district court ruled that "equal access” to the lyrics of the dance routines must be provided, and *396 Defendants have therefore been providing the lyrics by e-mailing song lyrics to Plaintiffs prior to the games. However, if, as the district court concluded, equal access to the lyrics of the dance routines is required, the auxiliary aid provided by Defendants must still be evaluated in terms of whether it results in "effective communication," and the district court's decision leaves open the question of whether prior e-mailing of the full lyrics of songs that may be played during the dance routines results in "effective communication.”

. However, as in the majority opinion, I would affirm the district court on Plaintiffs’ cross-appeal with respect to the determination that issues related to the FM radio broadcast were not raised in the Complaint and therefore are not properly before the court. I therefore join that portion of the majority opinion related to the FM radio broadcast issue.